**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**AT BOWLING GREEN**

**OLETTA MEDLIN**
    Plaintiff

v.                                                                                              No. 1:06CV-00023-J

**JO ANNE B. BARNHART**
    Commissioner of Social Security
    Defendant

**MAGISTRATE JUDGE'S REPORT**
**and RECOMMENDATION**

This matter is before the court upon the plaintiff's complaint seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g). The plaintiff is represented by Charles Richard Burchett. The fact and law summaries of the plaintiff and the defendant are at Docket Entry Nos. 7 and 10, respectively. This matter has been referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636.

The final decision of the Commissioner was rendered on August 22, 2005, by administrative law judge (ALJ) Ronald Kayser. In support of his decision denying Title II benefits, Judge Kayser entered the following numbered findings:

    1. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

    2. The claimant has an impairment or a combination of impairments considered "severe" based on the requirements in the Regulations 20 CFR § 404.1520(b).

    3. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

    4. The undersigned finds the claimant's allegations regarding her limitations are not totally credible.

5. The undersigned has carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairments (20 CFR § 404.1527).

6. The claimant has the residual functional capacity to lift and carry 40 pounds occasionally and 25 pounds more frequently. She can stand and walk six hours in an eight hour workday and sit six hours in an eight hour workday. She has no limitation in pushing and pulling. She can frequently climb ramps and stairs and kneel. She can occasionally stoop, crouch and crawl. She cannot climb ropes scaffolds and ladders.

7. The claimant's impairments do not prevent her from performing her past relevant work as a sewing machine operator.

8. Even if the Administrative Law Judge found the claimant could not return to her past work, the claimant could do other jobs as described by the vocational expert. There are jobs at the light exertional level with sit/stand options the claimant could do. There are 434,000 counter clerk jobs in the national economy and 5,600 such jobs in the state economy. There are 546,000 information clerk jobs in the national economy and 8,500 such jobs in the state economy.

9. The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of the decision (20 CFR § 404.1520(g)).

(Administrative Record (AR), pp. 25-26).

**Governing Legal Standards**

1. The court has jurisdiction to examine the record that was before the Commissioner on the date of the Commissioner's final decision and to enter a judgment affirming, modifying, or reversing that decision. 42 U.S.C. § 405(g), sentence four. In exercising its "sentence four" jurisdiction, the court is limited to determining whether the Commissioner's controlling findings are supported by substantial evidence and whether the Commissioner employed the proper legal standards in reaching her decision. *Richardson v. Perales*, 402 U.S. 389 (1971). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Kirk v. Secretary of Health and Human Services*, 667 F.2d 524 (6th Cir., 1981). It has been described as a sufficient amount of evidence "to justify, if the trial were to a jury, a refusal to direct a verdict."

*Sias v. Secretary*, 861 F.2d 475, 480 n. 1 (6th Cir., 1988). In determining whether the Commissioner's findings are supported by substantial evidence, the court must examine the evidence in the record taken as a whole and must take into account whatever in the record fairly detracts from its weight. *Wyatt v. Secretary*, 974 F.2d 680 (6th Cir., 1992). However:

> The substantial-evidence standard allows considerable latitude to administration decision makers. It presupposes that there is a zone of choice within which the decision makers can go either way, without interferences by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.

*Mullen v. Secretary*, 800 F.2d 535, 545 (6th Cir., 1986).

When conducting substantial evidence review, the court is restricted to a consideration of the evidence that was before the Commissioner on the date of the final decision. When the Appeals Council declines to review the ALJ's decision and render a new decision, the ALJ's decision becomes the Commissioner's final decision. *Cotton v. Secretary*, 2 F.3d 692 (6th Cir., 1993).

2. To be entitled to disability insurance benefits (DIB), a claimant must be under the age of 65 years, must meet the insured status requirements of Title II of the Social Security Act, and must be under a disability as defined by the Act.

3. Disability determination is a five-step sequential evaluation process, to-wit:

**STEP #1** The claimant must not be engaged in substantial gainful activity.

**STEP #2** The alleged disabling impairment must be "severe." A "severe" impairment is one that "significantly limits" a claimant's ability to do "basic work activities" that are "necessary to do most jobs" such as walking, standing, sitting, lifting, seeing, hearing, and speaking. 20 C.F.R. §§ 404.1521 and 416.921. Only a "slight abnormality which has such a minimal effect on the

individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education and work experience" is "nonsevere." *Farris v. Secretary*, 773 F.2d 85, 89-90 (6th Cir., 1985). Any physical or mental impairment that has more than a de minimis, or significant, effect on the claimant's ability to work is "severe," and the sequential evaluation should proceed to Step #3. In addition, the "severe" impairment must satisfy the so-called duration requirement, to-wit, the impairment must be expected to result in death or "must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. §§ 404.1509 and 416.909.

**STEP #3** If the claimant has a medical condition that meets or exceeds the criteria for an impairment defined in Appendix 1 of 20 C.F.R. Part 404, Subpart P of the regulations ("the Listing"), a conclusive presumption attaches that the claimant is disabled.

**STEP #4** The claimant must not be able to perform his past relevant work either as he actually performed it or as it generally performed in the national economy.

**STEP #5** If the claimant makes a prima facie showing that he cannot perform his past relevant work, the burden of going forward with evidence shifts to the Commissioner to show that a significant number of jobs exist in the national economy that the claimant can perform. *Born v. Secretary*, 923 F.2d 1168 (6th Cir., 1990). If the evidence supports a finding that the claimant's age, education, work experience, and residual functional capacity (used to determine the claimant's maximum sustained work capability for sedentary, light, medium, heavy or very heavy work as defined by 20 C.F.R. §§ 404.1567 and 416.967) coincide with all the criteria of a particular rule of Appendix 2 of Subpart P, the Commissioner must decide whether the claimant is disabled in accordance with that rule. Section 200.00(a) of Appendix 2; 20 C.F.R. §§ 404.1569a(b) and 416.969a(b).

If the claimant is found to have, in addition to the exertional impairments resulting in his maximum residual strength capabilities, nonexertional limitations, e.g., mental, sensory, or skin impairments, postural or manipulative limitations, and environmental restrictions; the Commissioner may rely on the particular rule only as a "framework for decisionmaking." Section 200.00(e)(1) and (2) of Appendix 2; 20 C.F.R. §§ 404.1569a(d) and 416.969a(d); *Kimbrough v. Secretary*, 801 F.2d 794 (6th Cir., 1986). Accordingly, the focus of judicial review in Step #5 cases is typically whether the controlling hypothetical posed to the vocational expert reflected all vocationally significant physical and mental limitations actually suffered by the claimant. *Varley v. Secretary*, 820 F.2d 777 (6th Cir., 1987).

### Step Four: Past Relevant Work

The ALJ found that the plaintiff retains the ability to perform her past relevant work as a textile sewing machine operator (fourth-step denial) and, alternatively, that she could perform a significant number of "light" counter clerk and information clerk jobs in the national economy (fifth-step denial). The plaintiff argues that neither alternative finding is supported by substantial evidence.

At the hearing, the plaintiff described her past relevant work as sedentary but requiring use of leg-foot controls. The vocational expert (VE), Dr. Julie Rogers, testified that the job is "considered a light occupation, even though it does ... involve sitting the majority of the day" (AR, p. 225). Consistent with the vocational testimony, Social Security Ruling (SSR) 83-10 provides that "[a] job is ... in this category [of "light" work] when it involves sitting most of the time but with some pushing and pulling of arm-hand or leg-foot controls, which require greater exertion than in sedentary work; e.g., mattress sewing machine operator, ...."

Although not required, an ALJ may rely upon testimony from a VE to support a finding that a claimant retains the ability to perform her past relevant work. *Key v. Secretary*, 109 F.3d 270, 274 (6th Cir., 1997). In this case, the VE testified that an individual with the following limitations would retain the ability to perform the plaintiff's past relevant work (AR, p. 226):

1. Ninth grade education.

2. Can push/pull without limitation; can frequently climb ramps / stairs and kneel; can occasionally stoop, crouch, and crawl; but must avoid climbing ropes, scaffolds, and ladders.

3. Can lift 50 pounds occasionally and 25 pounds more frequently.

4. Can sit and stand / walk, respectively, for six out of eight hours.

The VE further testified that an additional restriction of lifting 40 pounds occasionally and 25 pounds more frequently would not preclude the plaintiff's prior work (AR, pp. 226-227). These limitations mirror the ALJ's residual functional capacity (RFC) Finding No. 8.

The plaintiff argues that she is unable to perform her past relevant work because the probative medical evidence of record establishes that she suffers from an arthritic foot condition that precludes use of leg-foot controls as required in her prior job. Neither the hypothetical nor the ALJ's RFC finding acknowledges an inability to use foot controls.

At the hearing, the plaintiff testified that she began having problems with arthritis in her right foot four to five years ago (AR, pp. 221-222). She attributed the condition to 15 years of continuous use of a foot pedal as a sewing machine operator. The magistrate judge concludes that the plaintiff's argument is persuasive in light of the following probative medical evidence:

1. On June 16, 2004, the plaintiff's treating physician, Samuel Rice, opined that the plaintiff is restricted in use of her feet for treading (as in operating foot controls) (AR, p. 185). The opinion was "well-supported" by Dr. Rice's prior diagnosis of arthritis as contemplated by 20 C.F.R. § 404.1527(d)(2) (AR, p. 191). Therefore, the opinion is entitled to controlling weight.

2. In February of 2001, the plaintiff complained of foot pain to her treating orthopedist, Barret Lessenberry (AR, p. 124).

3. In April of 2002, she complained of leg and foot pain to Dr. Rice, who diagnosed arthritis (AR, p. 191).

4. In November of 2003, she complained to Dr. Rice about right foot and toe pain that caused her toes to curl up (AR, p. 188).

5. In August of 2004, she again complained to Dr. Rice of foot and leg pain. Dr. Rice reiterated his prior diagnosis of arthritis (AR, p. 196).

In his decision, the ALJ found a non-severe foot impairment for the following reasons (AR, pp. 22-23):

> The Administrative Law Judge finds there are essentially no objective findings to support significant limitations because of pain in her right foot. At the hearing the claimant alleged arthritis pain in her right foot and said that her toes curl up with prolonged walking and standing, but she said that Mobic pain medication eased the pain and she takes off her shoes and rubs her foot when it hurts. She mentioned the foot pain when she saw Dr. Reddy in February 2001 but he did not even comment on it (Exhibit 2F). She complained of no foot pain or foot problems to the consultative examiner in October 2003 other than alleging that back pain extends down to her feet (Exhibit 5F). She takes Mobic and over the counter pain medication for pain that is six on the pain scale. Her treating physician, Dr. Rice, mentioned foot pain only once on November 13, 2003 when he commented that her right foot and toes hurt some and her back tightens up sometimes. The objective medical evidence does not show significant imposition of limitations on ability to perform basic work activities because of right foot pain ... and the Administrative Law Judge concludes these would not be "severe" impairments.

The magistrate judge concludes that the above rationale is unpersuasive for the following reasons:

    1. A diagnosis of arthritis of the foot adequately supports a conclusion that the plaintiff can no longer continuously use foot controls.

    2. The fact that the plaintiff's foot pain level is a six on the pain scale only after she takes Mobic pain medication and with toe curling tends to support rather than undermines the above conclusion.

    3. Dr. Reddy was not obliged nor would one expect Dr. Reddy to "comment" further in his treatment notes upon a foot condition for which the plaintiff was already receiving treatment.

    4. Dr. Rice's treatment notes do not "mention[] foot pain only once on November 13, 2003."

    5. The lack of any reference in the consultative examiner's report in October of 2003, to any foot pain or problems does not establish that the plaintiff "complained of no foot pain or foot problems," and even if she did not complain on that one occasion, that would not establish that the condition did not exist.

In light of the foregoing, the magistrate judge concludes that the probative medical evidence establishes that the plaintiff has a "severe" foot condition that would preclude continuous use of foot controls and, therefore, would preclude her past relevant work. Therefore, we must consider the ALJ's alternative denial rationale at the fifth and final step of the sequential evaluation process.

### Step Five: Other Work in the National Economy

The plaintiff was born on May 5, 1952 (AR, p. 57). Therefore, she was 53 years old, or "closely approaching advanced age" as contemplated by 20 C.F.R. § 404.1563(d), on August 22, 2005, when the ALJ issued the Commissioner's final decision. The plaintiff has a ninth-grade education, which would be considered "limited" as contemplated by

20 C.F.R. § 404.1564(b)(3) (AR, p. 21). The VE testified that the plaintiff's past relevant work as sewing machine operator was unskilled to semiskilled but did not provide for transferability of skills outside the industry (AR, p. 225).

In light of the foregoing description of the plaintiff's age, education, and past relevant work experience, the magistrate judge concludes that the medical-vocational guidelines at Appendix 2 of 20 C.F.R. Part 404, Subpart P (the so-called "grid") dictate an ultimate finding of disability if the plaintiff has a maximum exertional capacity for "sedentary" work. See Grid Rules 201.09 through 201.11 ("sedentary" work) and 202.09 through 202.15 ("light" work). In other words, the ALJ was required to find that the plaintiff was capable of at least "light" work in order to issue a supportable fifth-step denial decision. The plaintiff argues that she is unable to perform "light" work and is disabled pursuant to Grid Rule 201.10 (maximum exertional capacity for "sedentary" work) (Docket Entry No. 7, p. 9).

The ALJ found that the plaintiff is able to perform the "light" jobs of counter clerk and information clerk. ALJ's Finding No. 8. These jobs were identified by the VE at the administrative hearing in response to a third hypothetical question presented by the ALJ beginning at AR, p. 228. In presenting the hypothetical, the ALJ asked the VE to assume an individual who "could lift 20 pounds on occasion, 10 pounds more frequently ... [p]ushing and pulling is limited to the lower extremities ... [a]nd limitations on overhead reaching with the upper right extremity" (AR, p. 228). The ALJ further requested the VE to assume that the individual could "[s]it and stand, two out of eight in a normal workday, with a sit/stand option. Sit six hours in an eight hour day" (AR, p. 228). The court may observe in passing that the hypothetical limitations do not correspond to the ALJ's RFC Finding No. 6. This suggests that, although the ALJ issued an alternative "step four / step five" denial decision, the ALJ's primary intent was to deny the case at the fourth step.

The VE was not asked and did not indicate that her testimony was consistent with information contained in the <u>Dictionary of Occupational Titles</u> (DOT) and did not identify the DOT job numbers, if any, of the jobs in question. However, upon cross-examination by counsel, the VE did clarify that these two positions of "light" counter clerk and "light" information clerk are relatively rare in the national economy in the sense that they "certainly [do] not represent the majority of jobs listed in the light category" (AR, p. 231).

Upon cross-examination, counsel stated that "honestly I didn't get all of the requirement within that" third hypothetical (AR, p. 229). In an attempt to clarify the hypothetical, the VE testified, somewhat inconsistently, as follows:

1. The ALJ identified no specific "limitations on the amount of time in that hypothetical a person could work with a sit/stand option" (AR, p. 230). In other words, the individual must be allowed to sit and stand at will.

2. "Well basically ... what I understood [the ALJ] to say was that [the individual] could stand two out of eight hours a day, sit six out of eight hours a day" (AR, p. 229). In other words, the individual can stand for two hours per workday.

For the reasons indicated forth below and in light of the definitions and requirements of "light" work contained within SSR 83-10 and 83-14, the magistrate judge concludes that the vocational testimony did not adequately support a fifth-step denial decision under either interpretation of the hypothetical suggested by the VE. At the fifth and final step of the sequential evaluation process, the Commissioner carries the burden of going forward with probative evidence of nondisability. If, as in the present case, the Commissioner relies upon a vocational hypothetical in support of his identification of jobs at step five, the question must accurately portray the plaintiff's actual limitations. See <u>Varley v. Secretary</u>, 820 F.2d 777 (6th Cir., 1987).

With respect to the first possible interpretation of the hypothetical (i.e., the individual must be allowed to sit and stand at will), SSR 83-10 provides that "[r]elatively few unskilled light jobs are performed in a seated position." Similarly, SSR 83-14 provides that "[t]he major difference between sedentary and light work is that most light jobs - particularly those at the unskilled level of complexity - require a person to be standing or walking most of the workday." The hypothetical did not mention that the individual in question (i.e., the plaintiff) has a "limited" education and no transferable job skills. It is not apparent that such an individual would have the education and/or job skills necessary to obtain work as a counter clerk and/or information clerk. Furthermore, although the VE did not identify the DOT code numbers, if any, of the jobs she had in mind, to the extent they involved assisting customers, it does not appear that they would accommodate a need to sit and stand at will, but instead would require standing or walking throughout the shift as required to assist customers.

The magistrate judge further concludes that the ALJ erred in failing to ask the VE at the hearing whether her testimony was consistent with information contained in the DOT. SSR 00-4p provides, in pertinent part, as follows *(emphasis added)*:

> *Resolving Conflicts in Occupational Information:* Occupational evidence provided by a VE ... generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between VE ... evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE ... evidence to support a determination or decision about whether the claimant is disabled. **At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.** Neither the DOT nor the VE ... evidence automatically "trumps" when there is a conflict. The adjudicator must resolve the conflict by determining if the explanation given by the VE .. is reasonable and provides a basis for relying on the VE ... testimony rather than on the DOT information.

11

The court cannot conclude that the error was harmless because there is a lack of probative evidence that the jobs in question are compatible with the plaintiff's education, job skills, and inability to stand and walk as may be required to assist customers.

With respect to the second interpretation suggested by the VE of the ALJ's controlling hypothetical (i.e., the plaintiff can stand for two hours per workday), courts have interpreted SSR 83-10 as implicitly providing that "light" work requires more than two hours of standing / walking per workday. The case of *Johnson v. Barnhart*, 2004 WL 1427118 (N.D.Ill.), is strikingly similar to the instant case in that the ALJ asked the VE to assume the exact same limitations as in the present case, i.e., the individual can lift 20 pounds occasionally and 10 pounds frequently and can stand for two hours and sit for six hours per workday. The court held as follows:

> The ALJ's finding concerning Plaintiff's ability to stand and/or walk belies his conclusion that Plaintiff can perform "a significant range of light work." With respect to Plaintiff's RFC, the ALJ found that Plaintiff retains the ability to lift and/or carry twenty (20) pounds occasionally and ten (10) pounds frequently. Applying Social Security Ruling 83-10, Plaintiff must therefore be able to remain on his feet (e.g., stand and/or walk) for at least two (2) hours and forty (40) minutes of an eight (8) hour workday. See Soc. Sec. Ruling 83-10, 1983 WL 31251, at *6 ("Frequent" means occurring from one-third to two-thirds of the time. Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday."). However, the ALJ found that Plaintiff is only able to stand and/or walk "at least 2 hours in an 8-hour workday, sitting about 6 hours." Because the maximum amount of time that Plaintiff can stand and/or walk may be limited to two (2) hours, the ALJ's factual findings concerning Plaintiff's ability to lift and/or carry and his ability to stand and/or walk are inconsistent. More importantly, the ALJ's decision does not sufficiently explain how Plaintiff could still perform "a significant range of light work" when he may (1) not be able to stand and/or walk for the length of time required to perform the lifting and/or carrying requirements of light work and (2) be able to stand and/or walk for only a third of the time required to perform the full range of light work. See also 20 C.F.R. §§ 404.1567, 416.967 ("To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities."); Soc. Sec. Ruling 83-14, 1983 WL 31254, at *4 (Soc.Sec.Admin.1983) ("The major difference between sedentary and light work is

that most light jobs-particularly those at the unskilled level of complexity-require a person to be standing or walking most of the workday."); *Allen v. Sullivan*, 977 F.2d 385, 390 (7th Cir., 1992) ("[L]ight work requires a capacity to stand and walk for six hours a day.")

The undersigned notes that the ALJ did expressly find that the plaintiff "can stand and walk six hours in an eight hour workday," which clearly falls within the parameters of "light" work. ALJ's RFC Finding No. 6. However, as noted above in passing, the ALJ's RFC finding does not correspond to the controlling hypothetical in support of a fifth-step denial decision. If an ALJ's identification of jobs is based upon vocational testimony, it is the actual limitations presented to the VE at the hearing that must govern judicial review. The ALJ based his identification of the jobs in Finding No. 8 upon the vocational testimony. The VE was not asked to assume that the individual is able to stand/walk for six hours.

The magistrate judge concludes that there is a lack of probative evidence that the plaintiff, who has a "limited" education and no transferable job skills, would be qualified to perform the jobs relied upon by the ALJ in support of a fifth-step denial and/or is capable of standing/walking sufficiently to assist customers or satisfy the lifting required of "light" work. This lack of evidence is compounded by the VE's failure to identify the DOT job numbers, if any, of the jobs to which she testified and the ALJ's failure to comply with the requirements of SSR 00-4p. At the least, a remand is required for clarification of these issues.

**The Plaintiff's Remaining Contentions:**
**Whether the Record Adequately Supports a Judicial Award of Benefits**

As mentioned above, the plaintiff argues that she is disabled pursuant to Grid Rule 201.10, which contemplates a maximum exertional capacity for "sedentary" work. In turn, the plaintiff relies upon the opinion of her treating physician, Samuel Rice, in support of a conclusion that she

13

can perform, at most, "sedentary" work.  On June 14, 2004, Dr. Rice completed the "residual functional capacity assessment" form (AR, pp. 185-186).  The form contains several findings that, if accepted, would preclude greater than "sedentary" work.  Indeed, Dr. Rice's findings would preclude all full-time work, to-wit:

1. The patient can stand daily at a work station for "less than 2 hours."

2. Can sit daily at a work station for only "2-3 hours."

3. Can work with a sit or stand option for "less than 4 hours."

4. Would miss work due to her physical impairments "5 or more days a month."

Generally, "sedentary" work involves standing/walking "no more than 2 hours in an 8-hour workday,  and sitting should generally total approximately 6 hours of an  8-hour  workday." SSR 83-10.

A treating physician's medical opinion is  entitled  to controlling  weight  only  if  it  is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record."  20 C.F.R.  § 404.1527(d)(2). The above findings by Dr. Rice presumably were based upon the plaintiff's low back condition. The ALJ found as follows (AR, p. 24):

> The Administrative Law Judge must reject the questionnaire of Dr. Rice as there is
> no support  in his treatment notes and it is directly contradicted by the findings on
> x-ray of the lumbar spine....   Dr. Reddy's *(sic.) (apparently the ALJ meant
> Dr. Rice's)* very restrictive assessment appears to be an accommodation of a
> compassionate treating physician in an attempt to help the claimant.

The x-ray to which the ALJ referred is at AR, p. 132.  Dr. Singh interpreted it as showing only "mild degernative disease [with] no bone destruction."  The treating orthopedist, Dr. Lessenberry, found the x-ray results to be "reassuring" (AR, p. 125).  He assured the plaintiff that her problem

was not "bony" but "muscular in etiology" and "will resolve." The magistrate judge concludes that the ALJ did not err in declining to give controlling weight to Dr. Rice's assessment as a whole. Therefore, the record does not adequately support a conclusion that the plaintiff is disabled pursuant to Grid Rule 201.10.

The plaintiff presents several other contentions, including the following:

1. The ALJ's pain-credibility analysis was flawed.

2. The ALJ's RFC finding lacked adequate medical support.

3. The ALJ's decision does not contain "good reasons" for rejecting Dr. Rice's opinions as required by 20 C.F.R. § 404.1527(d)(2).

4. The ALJ's decision contains the "obvious mistake of confusing the claimant's treating physicians," i.e., Drs. Rice and Reddy. The Commissioner has conceded that this "unfortunate mistake" occurred (Docket Entry No. 10, p. 6).

5. The ALJ's decision does not comport with the requirements of Appendix 1, Section 1.00Q and SSR 02-1p with respect to evaluation of the plaintiff's obesity.

The magistrate judge submits that, while these arguments may or may not have merit, none of them independently rises to the level of a reversible error requiring a judicial payment of benefits. Because we have already concluded that a remand for clarification of issues and further administrative proceedings is necessary for other reasons, it appears that these matters would be most efficiently addressed and corrected, if necessary, upon remand.

15

## RECOMMENDATION

The magistrate judge RECOMMENDS that this matter be REMANDED to the Commissioner for further administrative proceedings and a new decision not inconsistent with this report.

## NOTICE

Pursuant to 28 U.S.C. § 636(b)(1), any party shall have a period of ten (10) days, excluding intervening Saturdays, Sundays, and/or legal holidays pursuant to Fed.R.Civ.P. 6(a), from the date of notice of electronic filing within which to file written objections to the foregoing report with the Clerk of the Court.  Further and pursuant to Fed.R.Civ.P. 72(b), any party may file a response to objections filed by another party within ten (10) days, excluding Saturdays, Sundays, and/or intervening legal holidays, after being served with a copy of said objections.  A period of three days shall be added to each ten (10) day period above pursuant to Fed.R.Civ.P. 6(e).

The court shall not conduct a <u>de novo</u> review of objections that are general, conclusory, or merely adopt previous pleadings.  A copy of any objections and response thereto shall be served on the undersigned at Suite 330, 501 Broadway, Paducah, Kentucky, 42001.  Failure of a party to file timely objections shall constitute a waiver of the right to appeal by that party.  *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).